UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

GALVIN ROBINSON,           )
                           )
            Plaintiff,     )
                           )
vs.                        )
                           )
MATHESON TRI-GAS, INC., a foreign )
for-profit corporation,    )
                           )
            Defendant.     )
_____)

## DEFENDANT'S NOTICE OF AND PETITION FOR REMOVAL

Defendant, Matheson Tri-Gas, Inc. ("Matheson" or "Defendant"), in accordance with the applicable Federal Rules of Civil Procedure and 28 U.S.C. §§ 1332, 1441, and 1446, hereby files its Notice of and Petition for Removal (the "Notice"). Defendant requests that the Court remove this action filed by Plaintiff, Galvin Robinson ("Plaintiff"), from the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, to the United States District Court for the Southern District of Florida. The removal of this action is based upon the following:

1. On or about February 8, 2019, Plaintiff filed a civil action in the Circuit Court in and for Miami-Dade County, Florida, under the name *Galvin Robinson v. Matheson Tri-Gas*, (hereinafter the "Circuit Court case") asserting two counts of violations of the Florida Civil Rights Act of 1992 ("FCRA") for race discrimination (Count I) and retaliation (Count II). The Circuit Court case was assigned Case No. 2019-004250-CA-01.

2. On April 5, 2019, Plaintiff served Defendant with a Summons and the Complaint. *See* Exhibit "1." Therefore, this Notice has been filed within 30 days after service of the Complaint pursuant to 28 U.S.C. § 1446(b).

3. A copy of all process, pleadings, and orders served upon Defendant is attached to this Notice as Exhibit "2," as required by 28 U.S.C. § 1446(a).

4. Pursuant to 28 U.S.C. § 1446(d), Defendant provided written notice of the removal to all adverse parties in this action by filing a copy of this Notice in the Circuit Court in and for Miami-Dade County, Florida.

5. A removal is not proper unless "all defendants who have been properly joined and served … consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Defendant has complied with this requirement because Defendant is the only named Defendant and consents to removal and is filing this Notice of and Petition for Removal.

6. The District Court of the United States has original jurisdiction over this matter because it involves a controversy between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

7. The district embracing the place where such action is pending is the United States District Court for the Southern District of Florida. *See* 28 U.S.C. § 1441(a).

I. **DIVERSITY OF CITIZENSHIP**

8. At all relevant times, Plaintiff has been a resident of Miami-Dade County, Florida and therefore, is a citizen of Florida. *See* Compl. ¶ 2.

9. In the Complaint, Plaintiff asserts that Defendant's principal place of business is in Miami-Dade County, Florida. *Id.* at ¶ 3.

10. However, as of the time of the events alleged in the Complaint, and at the time the Circuit Court case was filed, Matheson was headquartered and had its principal place of business in Basking Ridge, New Jersey. *See* Exhibit "3," Matheson's 2018 Foreign Profit Corporation

Annual Report[1]; *see also* Exhibit "4," Declaration of Michael Sinicropi, ¶ 6. Matheson's officers directed, controlled, and coordinated the company's activities out of Basking Ridge, New Jersey. Therefore, at the time of the events alleged in the Complaint and at the time the Circuit Court case was filed, Matheson was a citizen of New Jersey. *See* 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1186 (2010) ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters . . . .") (citations omitted).

11. At the time of filing this Notice and Petition for Removal, Matheson's headquarters and principal place of business are located in Irving Texas. *See* Exhibit "5," Matheson's 2019 Foreign Profit Corporation Annual Report; *see also* Exhibit 4, ¶ 5. Matheson's officers direct, control, and coordinate the company's activities out of Irving, Texas. *Id*. Therefore, Matheson is now a citizen of Texas. *See* 28 U.S.C. § 1332(c)(1); *see also Friend*, 130 S. Ct. at 1186.

12. Accordingly, diversity of citizenship exists between the parties.

## II. AMOUNT IN CONTROVERSY

13. Pursuant to 28 U.S.C. § 1446(c)(2)(B), as amended, the notice of removal may assert the amount in controversy and removal is proper if the district court finds by a preponderance of the evidence that the amount in controversy exceeds $75,000.

---

[1] Defendant requests that the Court take judicial notice of records appended hereto from the Florida Division of Corporations. *See Allstate Ins. Co. v. Estate of Levesque*, No. 8:08-cv-2253-T-33EAJ, 2010 U.S. Dist. LEXIS 83299, at *5-6 (M.D. Fla. July 19, 2010) (providing that case law from the Eleventh Circuit and other jurisdictions supports judicially noticing documents filed with the Division of Corporations).

14. A notice of removal need only include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold . . . ." *Goldstein v. GFS Mkt. Realty Four, LLC*, No. 16-cv-60956-GAYLES, 2016 U.S. Dist. LEXIS 128839, at *8 (S.D. Fla. Sept. 21, 2016).

15. For purposes of establishing diversity jurisdiction, the Court may consider the entire record presented to it and not just the allegations in the Complaint. *See Ambridge v. Wells Fargo Bank, N.A.*, No. 8:14-cv-1212-EAK-TBM, 2014 U.S. Dist. LEXIS 126654, at *3 (M.D. Fla. Sept. 10, 2014) ("When determining if an unspecified amount in controversy is met, the Court may look beyond the complaint to 'evidence relevant to the amount in controversy at the time the case was removed.'") (internal citations omitted); *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (finding district courts may make "'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removal.") (citing *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)).

16. District Courts should not "suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount." *Pretka*, 608 F.3d at 770.

17. In the Complaint, Plaintiff made an unspecified demand for damages so as to trigger the Eleventh Circuit's *Tapscott* standard. *See Tapscott v. M.S. Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), overruled on other grounds by *Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000) ("where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the [$75,000] jurisdictional requirement"); *see also Roe*, 613 F.3d at 1064 ("preventing a district judge from acknowledging the value of the claim,

merely because it is unspecified by the plaintiff, would force the court to abdicate its statutory right to hear the case. This rule would reward plaintiffs for employing the kinds of manipulative devices against which the Supreme Court has admonished us to be vigilant"); *Young v. Roy's Rest.*, No. 6:06-cv-178-Orl-19JGG, 2006 U.S. Dist. LEXIS 48483, at *8 (M.D. Fla. July 16, 2006) ("[i]n making the discretionary determination of whether to remand, the Supreme Court has instructed courts to weigh the values of judicial economy, convenience, fairness, and comity. Central to this inquiry is whether a plaintiff has engaged in gamesmanship or manipulative tactics . . . tactical manipulation by the plaintiff . . . cannot be condoned") (internal citations omitted).[2]

18. Plaintiff seeks damages against Defendant, including back pay, benefits adjustment, front pay, "compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life," interest, reasonable attorneys' fees, costs, and "such additional relief as the Court deems just and proper under the circumstances." *See* Compl. at WHEREFORE clauses following ¶¶ 30, 38.

19. Under the FCRA, which is the basis for all counts in the Complaint, if Plaintiff prevails in this matter, the Court may:

> [I]ssue an order prohibiting the discriminatory practice and providing affirmative relief from the effects of the practice, including back pay. The court may also award compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages . . . The judgment for the total amount of punitive damages awarded under this section to an aggrieved person shall not exceed $100,000. In any action or proceeding under this subsection, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs….

---

[2] A plaintiff's unspecified demand does not place upon a removing defendant the daunting burden of proving, to a legal certainty, that a plaintiff's damages exceed the amount in controversy requirement. *Tapscott*, 77 F.3d at 1357.

Fla. Stat. § 760.11(5); *see also Gonzalez v. Honeywell Int'l, Inc.*, No. 8:16-cv-3359-T-30TGW, 2017 U.S. Dist. LEXIS 5837, at *7 (M.D. Fla. Jan. 17, 2017) ("Under the FCRA, a prevailing plaintiff can obtain compensatory damages, punitive damages, and attorney's fees. The Court must consider each of these in calculating the amount in controversy . . . The Court need not pinpoint the exact dollar figure of each of these forms of relief to recognize that their value adds thousands of dollars to the amount in controversy.").

    **A.**    <u>**BACK PAY**</u>

20.    In determining whether the amount in controversy has been met, the Court may consider Plaintiff's recoverable back pay through the date of removal. *See Prenatt v. KIMC Invs.*, No. 2:12-cv-14137-KMM, 2012 U.S. Dist. LEXIS 83822, at *4 (S.D. Fla. June 18, 2012).

21.    "[I]n calculating a back pay award, the trial court must determine what the employee would have earned had she not been the victim of discrimination, and must subtract from this figure the amount of actual interim earnings." *Brown v. Cunningham Lindsey U.S., Inc.*, No. 3:05-cv-141-J-32HTS, 2005 U.S. Dist. LEXIS 38862, at *10 (M.D. Fla. May 11, 2005).

22.    Plaintiff was employed by Defendant from on or about November 2, 2015 until on or about April 10, 2018. Exhibit 4 ¶ 7. At the time of his termination, Plaintiff was earning approximately $15.68 per hour. *Id.* ¶ 8.

23.    Since Plaintiff's termination, his lost wages to date (56 weeks) is approximately $35,123.20. Through the eventual trial date, this amount could be significantly higher.[3] It is therefore reasonable to assume that Plaintiff's potential recovery of back pay, in addition to the other damages Plaintiff may recover if he prevails (as discussed below), could easily satisfy the

---

[3] Assuming that trial in this matter took place within one year from the filing of this Petition, Plaintiff's back-pay damages would amount to $67,737.60.

amount in controversy. *See Schmidt v. Pantry, Inc.*, No. 1:11-cv-228-SPM-GRJ, 2012 U.S. Dist. LEXIS 53530, at *16 (N.D. Fla. Mar. 6, 2012) (finding amount in controversy requirement was satisfied by the collective amount of recoverable back wages, compensatory damages, and reasonable attorney's fees); *Penalver v. Northern Elec. Inc.*, No. 12-80188-CIV-COHN/SELTZER, 2012 U.S. Dist. LEXIS 53662, at *10 (S.D. Fla. Apr. 17, 2012) ("The aggregate amount of the estimated back pay, front pay, compensatory damages, punitive damages, and attorney's fees demonstrates that it is more likely than not that the amount in controversy exceeds $75,000.").

### B.  FRONT PAY

24. Under the FCRA, a prevailing plaintiff is presumptively entitled to reinstatement or front pay. *Gonzalez*, 2017 U.S. Dist. LEXIS 5837, at *5-6.  "[C]ourts in this Circuit have previously held that it is reasonable to add one year of front pay to the amount in controversy in an FCRA employment discrimination case." *Id.*; *see also Wineberger v. Racetrac Petroleum, Inc.*, 672 F. App'x 914, 917 (11th Cir. 2016) (finding that the "district court correctly considered front pay because the amount in controversy is dependent on facts at the time of removal"); *Booker v. Doyon Sec. Servs., LLC*, No. 16-24146-CIV-LENARD/GOODMAN, 2017 U.S. Dist. LEXIS 220781, at *9 (S.D. Fla. Jan. 20, 2017) (finding that where front pay is available under applicable statute, front pay "may be considered for amount in controversy purposes").  Here, one year of front pay is approximately $32,614.40.  The amount Plaintiff may recover in front pay in addition to the amount he may recover in back pay exceeds the minimum amount in controversy requirement.

### C.     COMPENSATORY DAMAGES

25. Plaintiff also seeks compensatory damages. *See* Compl. at WHEREFORE clause following ¶¶ 30, 38.

26. Evidence of compensatory damages can be considered in ascertaining if the amount in controversy exceeds $75,000. *Booker*, 2017 U.S. Dist. LEXIS 220781 at *10 (noting that compensatory damages could be taken into consideration when determining amount in controversy); *Cowan v. Genesco, Inc.*, No. 3:14-cv-261-J-34JRK, 2014 U.S. Dist. LEXIS 95412, at *15 (M.D. Fla. July 14, 2014) (finding amount in controversy was met because the FCRA places no limit on the recovery of compensatory damages); *Barnes v. Jetblue Airways Corp.*, No. 07-60441-CIV-COHN, 2007 U.S. Dist. LEXIS 33276, at *5 (S.D. Fla. May 7, 2007) (finding that the $75,000 jurisdictional amount was satisfied for diversity purposes based, in part, on plaintiff's claim for compensatory damages which the court determined could easily match the amount of economic damages). Because Plaintiff could potentially recover approximately $67,737.60 in combined back pay (to date) and one year of front pay, by awarding an equal amount in compensatory damages, the amount in controversy could equal approximately $135,475.20.

27. Based on the fact that Plaintiff is seeking compensatory damages, the amount in controversy is easily satisfied, without even considering the remaining potential damages, explained *infra*. *Roe*, 613 F.3d at 1061-62 (stating that "Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable.") (citations omitted).

### D.     PUNITIVE DAMAGES

28.     The amount in controversy on Plaintiff's claims would also reach the statutory minimum to the extent that he ultimately sought punitive damages. If Plaintiff prevails at trial and makes the requisite showing, he could recover up to $100,000 in punitive damages under the FCRA. *See* Fla. Stat. § 760.11(5). Plaintiff's Complaint does not state that, were punitive damages recoverable, he would seek anything below the minimum amount of $100,000. Therefore, the amount in controversy can reasonably be expected to exceed the $75,000 jurisdictional requirement. *See Cunningham Lindsey*, 2005 U.S. Dist. LEXIS 38862 at *16 (concluding that the amount in controversy exceeded $75,000, in part, because the plaintiff was seeking punitive damages and nothing in her motion to remand indicated that she was seeking less than $100,000 statutory maximum).

### E.     ATTORNEY'S FEES AND COSTS

29.     Finally, Plaintiff seeks recovery for reasonable attorney's fees and costs, which are expressly provided for by the FCRA. *See* Fla. Stat. § 760.11(5). "When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy." *Cowan*, 2014 U.S. Dist. LEXIS 95412, at *15. Courts in the Southern District of Florida have found that "at a minimum, reasonable fees would be at least a third of any damage award." *Barnes*, 2007 U.S. Dist. LEXIS 33276 at *6. Again, following this precedent and taking into consideration Plaintiff's potential recovery as outlined above, Plaintiff's claims for damages easily surpass the amount in controversy requirement.

30.     Based on Plaintiff's potential recovery of back pay, front pay, compensatory damages, punitive damages, and attorney's fees, Defendant has established by a preponderance of the evidence that the amount in controversy in this matter is in excess of $75,000. *See Read v.*

*GMAC Ins. Co. Online*, No. 13-14316-CIV, 2013 U.S. Dist. LEXIS 192572, at *7 (S.D. Fla. Sep. 11, 2013) ("Making reasonable deductions, inferences, and other reasonable extrapolations from the pleadings, the Court finds that Plaintiff was seeking damages in excess of $75,000.00 from GMAC at the time of removal").

WHEREFORE, Defendant respectfully requests that the United States District Court for the Southern District of Florida accepts the removal of this action from the Circuit Court and directs that the Circuit Court in and for Miami-Dade County, Florida, has no further jurisdiction of this matter unless this case is remanded.

Dated: May 6, 2019

                                                    Respectfully submitted,

JACKSON LEWIS P.C.
One Biscayne Tower
2 South Biscayne Boulevard, Suite 3500
Miami, FL 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

*By: s/ Pedro J. Torres-Díaz*
Pedro J. Torres-Díaz, Esq.
Florida Bar No. 19327
E-mail: *pedro.torres-diaz@jacksonlewis.com*
Christopher T. Perré, Esq.
Florida Bar No. 123902
E-mail:*christopher.perre@jacksonlewis.com*

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of May 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF. I also certify that the foregoing document is being served this day on the counsel of record identified on the below Service List in the manner specified.

*s/ Christopher T. Perré*
Christopher T. Perré, Esq.

**SERVICE LIST**

| | |
|---|---|
| Rainier Regueiro, Esq. | Pedro J. Torres-Díaz, Esq. |
| Florida Bar No. 115578 | Florida Bar No. 19327 |
| E-mail: *rregueiro@rgpattorneys.com* | E-mail: *pedro.torres-diaz@jacksonlewis.com* |
| REMER & GEORGES-PIERRE, PLLC | Christopher T. Perré, Esq. |
| 319 Clematis Street, Suite 606 | Florida Bar No. 123902 |
| West Palm Beach, Florida 33401 | E-mail: *christopher.perre@jacksonlewis.com* |
| Telephone: 561-225-1970 | JACKSON LEWIS P.C. |
| Facsimile: 305-416-5005 | One Biscayne Tower, Suite 3500 |
| *Attorneys for Plaintiff* | 2 South Biscayne Boulevard |
| | Miami, Florida 33131 |
| | Telephone: 305-577-7600 |
| | Facsimile: 305-373-4466 |
| | *Attorneys for Defendant* |